## MOWER v. OLSEN et al.

No. 2967.   Decided March 29, 1917.   (164 Pac. 482.)

1. ANIMALS—TRESPASSING ANIMALS—ACTIONS—COMPLAINT. A complaint alleging plaintiffs' ownership of land, defendant's ownership of sheep, and that the sheep trespassed on the lands of plaintiff to his damage, is sufficient as against general demurrer, though not expressly alleging that the trespass was willful and intentional; for the word "trespass" implies as much. (Page 376.)

2. APPEAL AND ERROR—REVIEW—HARMLESS ERROR. Where an action was tried to the court, and there was sufficient competent testimony to sustain its findings, the admission of incompetent testimony will be deemed harmless.[1] (Page 376.)

3. ANIMALS—TRESPASS ON UNINCLOSED LANDS—LIABILITY. Under Comp. Laws 1907, Section 20, declaring that, if any neat cattle, horses, sheep, etc., shall trespass or do damage upon the premises of any person, except where such premises are not inclosed by a lawful fence in counties where a fence is required by law, the party aggrieved may recover damages by an action at law against the owner of the trespassing animals, an owner of sheep who directed his herder to drive or permit the animals on uninclosed lands of plaintiff is liable, though the statute, while recognizing the common law rule requiring every owner to restrict his animals on his own lands, made exceptions as to uninclosed lands.[2] (Page 377.)

4. ANIMALS — TRESPASSING ANIMALS — ACTIONS—EVIDENCE—SUFFICIENCY. In an action against a sheep owner for damages for the trespass of his sheep on plaintiff's property, evidence held to warrant a finding that the trespass was willful and intentional. (Page 380.)

Appeal from District Court, Seventh District; *Hon. A. H. Christensen,* Judge.

Action by Hyrum D. Mower against William Olsen and others.

---

[1] *Victoria, etc., Co.* v. *Haws.* 7 Utah 515, 27 Pac. 695; *Spratt* v. *Paulson,* 49 Utah 9, 161 Pac. 1121.

[2] *Buford* v. *Houtz,* 5 Utah 591, 18 Pac. 633; *Jones* v. *Blythe,* 33 Utah 362, 93 Pac. 994.

Judgment for plaintiff.

Defendants appeal.

AFFIRMED.

*J. W. Cherry* for appellant.

*Jacob Johnson* for respondent.

CORFMAN, J.

This was an action brought to recover damages for trespass of defendants sheep on plaintiff's lands. A trial to the court without a jury resulted in judgment for the plaintiff. Defendants appeal.

The complaint describes and alleges the ownership in the plaintiff of certain lands in Sanpete County; that during the times mentioned in the complaint the defendants were the owners, in possession, and chargeable with the care of about 1,000 head of sheep; that at divers times during the month of May, 1915, and particularly on the 12th, 13th, 15th, 17th, 18th, 19th, 21st, and 22d of said month of May, the sheep ran and trespassed upon the lands of plaintiff, ate up, trod down, injured, and destroyed the grass and verdure growing thereon, and in consequence plaintiff suffered loss and damage in the sum of $75, for which plaintiff prays judgment.

The answer admits the ownership in the defendant Guy Olsen of 852 head of sheep, denies generally the other allegations of the complaint, and, as a special defense, affirmatively alleges that a portion of the lands described in the complaint was at the times mentioned therein wild, uncultivated, and uninclosed lands adjoining the public domain, and that, while the defendant Guy Olsen was lawfully grazing his sheep on his own land and on the public domain near the said lands in question, a small number, without the knowledge of the defendants, strayed thereon, and for a few hours grazed without damage to the plaintiff.

It appears from the record that during the times of the alleged trespass plaintiff was the owner of 320 acres of land in Indianola precinct, Sanpete County, through which

a county road extended, running north and south, thus separating the land in two parts, one to the east and one to the west of the county road. About 130 acres of the entire tract on the west side of the road was cultivated land. The balance of the tract on the west and all on the east side of the road was in a wild state, producing nature grass only, and was used for the pasturing of live stock. The lands lying to the east of the county road were uninclosed, except on the west and a part of the way on the north side. The land adjoining on the east and south sides was public land. The plaintiff had a dwelling house on the land east of the road. A spring of water is on the land east of the road, and it was at and in the vicinity of this spring where the defendants' sheep were generally seen by witnesses who testified at the trial as to the trespass over an area of approximately 120 acres. Defendants were the owners of and in charge of about 900 head of sheep. The sheep were in the immediate control of a herder under the direction of the defendants, and the sheep were being held and grazed on public lands, and of private ownership as well, adjoining and in close proximity to plaintiff's lands. Conversations were had between plaintiff and defendants regarding the trespassing of the sheep upon plaintiff's land, and some attempt made to compromise and settle their differences out of court; the parties going over the plaintiff's land together at a time when some of the sheep were grazing thereon. The sheep were seen grazing upon plaintiff's land on divers occasions, as alleged in the complaint, and it was testified to that the herder in charge of the sheep when they were being driven off stated he was instructed by defendants to pay no attention to the line of plaintiff's land. The defendants had before paid the plaintiff ten dollars damages to the land for 1913 or 1914. A Mr. Bushman, who was pasturing his cows on the land, testified that he had said to the herder, while he and the herder were driving the sheep off the land, that he would have to take his cows out as the feed was all gone, and the herder had said, "That is no difference to me; Olsen told me to get some feed," and "Never mind the line."

Such, in brief, was the testimony from which the trial court made its findings and entered its judgment.

Numerous errors are assigned by defendants, all of which have been reviewed by this court. We will here discuss, however, only such as are contended for by appellants in their brief, and as may be material for the proper determination of this appeal.

1. It is urged that the trial court committed error in the overruling of defendants' demurrer to the complaint. The demurrer was a general one, on the ground the complaint did not state facts sufficient to constitute a cause of action. Wherein the complaint is insufficient counsel does not seem to very clearly point out. Suffice to say the complaint in form and substance seems to state a cause of action in clear and concise language and conforms with, and is adapted to, the practice of the Western code states. 4 Suth. Code Pl. & Pr. Forms, section 6595. While it is not expressly alleged in the complaint that the trespass complained of was a wilful and an intentional one, yet, in the broadest sense, we think the term "trespass" implies as much, and that defendant's general demurrer was properly overruled.

2. Errors are also assigned by defendants on the ground that the trial court received evidence of the declarations of the person in charge (the herder) of defendants' sheep at the times when the trespass complained of was being committed. There seems to be sufficient testimony to show that the sheep were in charge of a herder under the immediate supervision of at least one of the defendants. The record further shows that the sheep were repeatedly driven off the plaintiff's land while they were in charge of the herder. It was testified to by plaintiff, without objection on the part of defendants, that on one occasion, when the plaintiff, one Ira Hollman, and the herder, were engaged in driving the sheep from the land, "the herder said Olsen had told him to pay no attention to the north lines; he said every sheep that Olsen had got has been bedding upon your ground." Subsequently, other conversations were had by plaintiff with the herder in charge of the sheep while they were on plain-

tiff's lands in which declarations were made by the herder to the effect that the defendants had instructed him to not regard plaintiff's private ownership and use `of the lands. These subsequent declarations of the herder in charge of the trespassing sheep,` when testified to by plaintiff's witnesses, were objected to by defendants on the grounds that it was hearsay and incompetent, and, the trial court having received the testimony, errors are assigned. After carefully reading the evidence in this case, we deem it wholly unnecessary to enter upon a discussion of, or pass upon, the admissibility of this evidence; for, in view of the whole record, this court's findings in that regard for or against the contention of the defendants would not at all be controlling. Assuming, but not deciding, that these assignments of error made by defendants, as a matter of law, are well taken, the cause having been tried to the court without a jury, the judgment will not be reversed, as there is sufficient competent evidence to sustain the findings of the trial court. *Victoria, etc., Co.* v. *Haws,* 7 Utah 515, 27 Pac. 695; *Spratt* v. *Paulson,* 49 Utah 9, 161 Pac. 1121.

Other errors assigned and contended for by defendants may be best considered in now determining whether or not the judgment of the trial court against the defendants, in plaintiff's favor, in view of the facts disclosed by the evidence, is against the law, as provided by statute and as announced by this court in its former decisions.

Comp. Laws 1907, section 20, p. 136, so far as applicable here, provides:

"If any neat cattle, horses, asses, mules, sheep, goats, or swine shall trespass or do damage upon the premises of any person, except in cases where such premises are not inclosed by a lawful fence in counties where a fence is required by law, the party aggrieved, whether he be the owner or the occupant of such premises, may recover damages by an action at law against the owner of the trespassing animals."

It will be observed that the statute above quoted is in conformity with the common law, requiring every owner to restrain his animals within his own lands. However, it was

held in the case of *Buford* v. *Houtz,* 5 Utah 591, 18 Pac. 633, and later affirmed in 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618, that the requirement of the common law is not adapted nor applicable to the sparsely settled portions of the West. Later, and after the enactment of the Utah statute above quoted, the question was again before this court as to the purport and proper construction of this statute, under a given statement of facts, in the case of *Jones* v. *Blythe,* 33 Utah, 362, 93 Pac. 994. Justice McCarty, speaking for the court upon the matter of wilful and intentional trespass upon uninclosed lands in counties where a fence law is in force, says:

"We think it is plain that the Legislature, by this statute, intended to take away all remedy by suit or impounding for damages caused by the stock of one party straying upon the uninclosed lands of another in counties where a fence law is required; and while it is true that, under the statute referred to appellant would not have been liable for damages caused by an involuntary or inadvertent intrusion of his sheep upon the lands in question, the statute gave him no right to deliberately and intentionally drive his sheep, or to so direct their movement as to cause them to go, upon the lands in question, and keep them there against the will of the respondent. In other words, while the statute withholds from the owner of uninclosed lands, in counties where there is a fence law in force, the right to impound and hold for damages animals trespassing upon such lands, it certainly does not deprive the owner of the right to remove the trespassing animals therefrom; hence it necessarily follows that the owner may, by suit, collect damages for a wilful and malicious trespass, such as the evidence conclusively shows was committed in this case."

The Supreme Court of the United States, in passing upon a Texas statute similar to our own, in the case of *Lazarus* v. *Phelps,* 152 U. S. 81, 14 Sup. Ct. 477, 38 L. Ed. 363, is quoted by Mr. Justice McCarty in *Jones* v. *Blythe, supra,* as follows:

"The object of the statute above cited is manifest. As there are, or were, in the State of Texas, as well as in the newer states of the West generally, vast areas of land over which, so long as the government owned them, cattle had been permitted to roam at will for pasturage, it was not thought proper, as the land was gradually taken up by individual proprietors, to change the custom of the country in that particular, and oblige cattle owners to incur the heavy expense of fencing their land, or be held as trespassers by

reason of their cattle accidentally straying upon the lands of others. It could never have been intended, however, to authorize cattle owners deliberately to take possession of such lands and pasture their cattle upon them without making compensation, particularly if this were done against the will of the owner, or under such circumstances as to show a deliberate intent to obtain the benefit of another's pasturage. In other words, the trespass authorized, or rather condoned, was an accidental trespass caused by straying cattle."

Then again, in a much later case, *Thomas* v. *Blythe*, 44 Utah 1, 137 Pac. 396, Justice Frick, commenting on the statute and the construction to be placed upon it, says:

"Respondent's lands come within the vast area of arid lands aforesaid, and the mere fact that he may be the owner of the lands described in the complaint does not change their character in the least degree. Nor does that fact, standing alone, give him any special rights as against animals that are not intentionally driven or kept thereon against his will. It is only when animals are driven onto or kept on his lands against his consent that he has any legal cause for complaint. It is his protest or refusal to consent that makes the owner of such animals a wrongdoer and liable for damages. The rights and duties aforesaid arise out of the nature of things in this arid country. However, when one is warned to keep his animals off certain lands which are owned by another, and which are pointed out by the latter to the former, the former cannot complain if he is held liable for the damages he may cause to such other by intentionally having his animals eat and destroy the grass and herbage growing upon such lands."

It will be seen from the foregoing cases, all cited in the defendants' brief, that this court construes the statute to mean, and now stands committed to the doctrine, that where a party knowingly, deliberately and intentionally drives or permits his animals to go upon the lands of another, against his will and regardless of his protests, for the purpose of deriving the benefit of his pasturage, it becomes such a trespass as the law will require him to answer for in damages.

True, it is earnestly contended by counsel for defendants that there is no evidence in the record here of a wilful and intentional trespass on the part of the defendants, but with this contention, after perusing the testimony given before the trial court, we cannot agree. While there is some con-

flict in the testimony bearing on the question of wilful     4
and intentional trespassing, yet there appears to be an
abundance of proof in the record to show that the defend-
ants were acquainted with the fact that their sheep were
entering upon the lands of plaintiff and eating up the grasses
thereon. Not only were the physical conditions and surround-
ings such as to put any reasonably prudent person on notice
of private ownership and use of the lands in question, but the
conversations had between the plaintiff and the defendants
concerning the sheep entering and feeding on the lands in
question, the undisputed testimony given that the defendants
had paid to the plaintiff damages on account of their sheep
trespassing on the same lands during 1913 or 1914 previous,
and the repeated attempts made by plaintiff and defendants
to settle out of court the plaintiff's claim for damages against
them all very conclusively tends to show that the defendants
well knew and appreciated that their sheep were at the times
here complained of against them by plaintiff intruding upon
privately owned and used lands of plaintiff, and affords very
convincing proof that the trespassing was wilful and inten-
tional.

We are of the opinion that the findings of the trial court
are fully sustained by the evidence, as disclosed by the record
in this case, and therefore the judgment must be affirmed.

It is so ordered; respondent to recover costs.

FRICK, C. J., and McCARTY, J., concur.